UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMANDA GEORGE,
          *Plaintiff*,

          v.

                                                    No. 3:19-cv-01456 (JAM)

ANDREW M. SAUL, *Commissioner,*
*Social Security Administration,*
          *Defendant*.

ORDER GRANTING MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Amanda George has long suffered from several physical and mental

impairments, and she claims that she is disabled because of these impairments. She has brought

this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the

Commissioner of Social Security, who denied her claim for Title II social security disability

insurance. George has filed a motion to reverse the decision of the Commissioner (Doc. #11),

and the Commissioner has filed a motion to affirm (Doc. #12). For the reasons discussed below,

I will grant the Commissioner's motion to affirm and deny the motion to reverse.

BACKGROUND

The following facts are taken from transcripts provided by the Commissioner. *See* Doc.

#10.[1] George's most recent long-term employment was as a medical billing clerk, where she

worked for ten years before quitting due to panic attacks. George filed a Title II application for

disability and disability insurance benefits on June 20, 2016, alleging disability beginning on

January 16, 2015. George's claims were denied on June 13, 2017, and again upon

reconsideration on November 9, 2017. She then timely filed a written request for a hearing.

---

[1] Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of
reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).

George appeared and testified before an Administrative Law Judge ("ALJ") on July 20, 2018. She was represented by counsel. Vocational expert Edmond J. Calandra testified at the hearing. On August 2, 2018, the ALJ issued a decision concluding that George was not disabled within the meaning of the Social Security Act. The ALJ further concluded that George could not perform her past work as a billing clerk but had the residual capacity to perform three other jobs with significant numbers in the national economy. On July 24, 2019, the Appeals Council denied George's request for review of the ALJ's decision. George then timely filed this federal action seeking review of the ALJ's decision. Doc. #1.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

The agency engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or his past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that George had not engaged in substantial gainful activity since January 16, 2015, the alleged onset date. Doc. #10 at 17 (Tr. 12). At Step Two, the ALJ concluded that George suffered from the following severe impairments: epilepsy; obesity; other diseases of the circulatory system; depressive, bipolar and related disorders; trauma and stressor-related disorders; anxiety; sedative hypnotic use disorder; opioid use disorder; and Benzodiazepine dependence. Doc. #10 at 18 (Tr. 13).

At Step Three, the ALJ determined that George did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in

3

20 C.F.R. Part 404, Subpart P, Appendix 1. Doc. #10 at 18 (Tr. 13). The ALJ then found that

George had a residual functional capacity ("RFC") to perform sedentary work as defined in 20

C.F.R. 404.1567(a), except that she must avoid crawling, frequently balancing, and climbing of

ramps and stairs, with occasional stooping, crouching, and kneeling, but no crawling or climbing

ladders, ropes or scaffold; could engage in frequent fingering with bilateral hands; should have

no exposure to extreme cold or unprotected heights and dangerous moving parts or machinery;

be limited to simple, routine, repetitive tasks not at a production rate pace; and have frequent

interaction with supervisors, occasional interaction with co-workers and rare interaction (up to

5% per day) with the general public on a personal rather than telephonic basis. Doc. #10 at 19

(Tr. 14).

At Step Four, the ALJ determined that George is unable to perform any past relevant

work. Doc. #10 at 26 (Tr. 21). At Step Five, the ALJ relied on the testimony of a vocational

expert who opined that a person of George's age (41), education (at least high school), work

background, and residual functional capacity could perform the requirements of a jewelry

painter, automatic grinding machine operator, and security surveillance system monitor,

positions which combined represented around 10,500 jobs nationally. Doc. #10 at 27 (Tr. 22).

The ALJ ultimately concluded that George was not disabled within the meaning of the Social

Security Act.

**DISCUSSION**

The Court may "set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by substantial evidence or if the decision is

based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C.

§ 405(g); 42 U.S.C. § 1383(c)(1) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than

a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

George makes four claims of error. First, George claims that the ALJ improperly assigned partial weight to a number of opinions. Second, George claims that the ALJ did not sufficiently incorporate certain opinions in the RFC. Third, George claims that the ALJ improperly relied on his lay interpretation of the medical record when formulating the RFC. Fourth, George claims that the ALJ did not meet his burden at Step Five. Doc. #11-1 at 2. Taken together, George's principal arguments for remand are that the ALJ's RFC decision is not supported by substantial evidence and that the ALJ made an error at Step Five. Doc. #11-1 at 7.

### *Weight of opinion evidence*

George argues that the ALJ failed to give proper weight to the opinions of Dr. Awwa, a treating psychiatrist; Carol Sharp, a licensed clinical social worker; and Candace O'Brien, a nurse. I will address each in turn.

George claims that the ALJ erred in assigning "limited weight" to Dr. Awwa's opinion. Doc. #11-1 at 8. I do not agree. Dr. Awwa rendered his opinion on a completed Mental Impairment Questionnaire co-signed by PA Zmyslinski and dated December 8, 2015. Doc. #10 at 668-73 (Tr. 663-68). The questionnaire contained two pages of short-answer questions followed by a series of multiple-choice questions. *Ibid.* The Second Circuit has previously held that medical opinions given in a standardized multiple-choice form are only "marginally useful." *Klodzinski v. Astrue*, 274 Fed. Appx. 72, 73 (2d Cir. 2008).

Dr. Awwa supplemented his responses to some of the multiple-choice questions with handwritten explanations. Doc. #10 at 668-73 (Tr. 663-68). He opined in these explanations that George experienced mood swings, sleep disturbances, impulsive behavior, low tolerance for frustration, flight of ideas, and was easily distracted. Doc. #10 at 668-73 (Tr. 663-68). George points to these handwritten responses and argues that the ALJ should have assigned Dr. Awwa's opinion more weight because his opinion is consistent with other opinions in the record. Doc. #11-1 at 8.  But opinions rendered later—including the treatment notes of PA Zymslinski, who co-signed the questionnaire—indicate that by the summer of 2016, George was oriented, could attend to tasks normally, had no flight of ideas, had her drug abuse problem under control, and her mood was stabilized. Doc. #10 at 1129, 1255 (Tr. 1124, 1250). It is within the ALJ's discretion to resolve the inconsistencies in the record and to assign partial weight to opinions that were not supported by the rest of the record. Accordingly, I find that the ALJ did not err in assigning limited weight to Dr. Awwa's opinion.

George next alleges that the ALJ erred in assigning limited to no weight to treating source Carol Sharp, a licensed clinical social worker, and Candace O'Brien, a nurse. Doc. #11-1 at 9. The ALJ accorded their opinions limited weight because they were rendered on Mental Impairment Questionnaires with multiple-choice questions and neither Sharp nor O'Brien analyzed George's substance abuse problem.  Doc. #10 at 25 (Tr. 20). The ALJ gave one of Sharp's letters "no weight" because Sharp wrote that George was unable to work, which is not a medical opinion but an administrative finding. *Ibid.*; 20 C.F.R. § 404.1527(d).

George's arguments that the ALJ improperly discounted the opinions of Sharp and O'Brien are not persuasive.  As discussed above, the ALJ may properly discount opinions when rendered on a "check-box" form. *See Latham v. Colvin*, 2016 WL 6067848, at *4 (W.D.N.Y.

6

2016). George argues that the ALJ should nevertheless have given more weight to the opinions

of Sharp and O'Brien because they supplemented their multiple-choice responses with

handwritten comments. Doc. #11-1 at 9. Sharp and O'Brien opined that George has memory and

concentration issues, "seriously impacted" judgment and insight during manic episodes, was

"distractible," and had "difficulty with social interactions." Doc. #10 at 486, 1248, 1278 (Tr.

481, 1243, 1273). But Sharp also opined in April 2018, after seeing George weekly for over three

years, that George could interact appropriately with the general public and maintain socially

appropriate behavior. *Id.* at 1482 (Tr. 1477). O'Brien opined in August 2017 that George had

"normal" thought processes and was showing "intact" judgment and insight. *Id.* at 1257 (Tr.

1252). Other medical opinions in the record also indicate that George was responsive to medical

treatment and her mood swings had improved by the summer of 2017. *See, e.g.*, *id.* at 1259, 1261

(Tr. 1254, 1256).

The parties do not dispute that Sharp and O'Brien are not treating medical sources, but

rather "other source opinion[s]." Doc. #10 at 25 (Tr. 20); 20 C.F.R. § 404.1513(a)(4).  An ALJ

should not reject the opinion of a non-medical treating source based solely on the fact that the

source is not "medical." *See, e.g.*, *Gillies v. Astrue*, 2009 WL 1161500, at *6 (W.D.N.Y. 2019).

Nevertheless, the ALJ has the discretion to discount such opinion evidence if it is contradicted by

objective medical evidence and opinions of medical consultants. *See, e.g.*, *Figueroa v. Astrue*,

2009 WL 4496048, at *12 (S.D.N.Y 2009). It was within the ALJ's discretion to resolve

inconsistencies in the record and to assign partial weight to opinions that he found were not

supported by the rest of the record.

### *The RFC finding*

The regulations state that the RFC is "the most [the disability claimant] can still do

7

despite [his or her] limitations." 20 CFR § 404.1545(a)(1). The RFC is an "administrative

finding[] that [is] dispositive of the case," it is an issue reserved for the Commissioner, and it is

not a medical opinion. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); §§ 404.1527(d), 416.927(d).

In assessing a disability claimant's residual functional capacity, the ALJ must consider all

relevant medical and other evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ has the

discretion to resolve "genuine conflicts" in the evidence. *Veino v. Barnhart,* 312 F.3d 578, 588

(2d Cir. 2002). And the ALJ is entitled to make an RFC finding that is consistent with the

medical record as a whole. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013).

George argues that the ALJ erred in the RFC determination in primarily two respects.

Doc. #11-1 at 13.  George first alleges that the ALJ did not sufficiently incorporate the opinion

of Dr. Akus into the RFC, arguing that the ALJ should have included the limitation to only

occasional fingering in the winter months. *Ibid*. Dr. Akus opined that George's hands would

"trouble her when she types and has trauma to her fingertips" and that her disorder of the fingers

would flare up when she was exposed to the cold. Doc. #10 at 1224-25 (Tr. 1219-20). Dr. Akus

further opined that George has "fine motor dexterity intact." *Id.* at 1225 (Tr. 1220).

The allegation that the ALJ did not incorporate the opinion evidence of Dr. Akus into the

RFC is meritless. The RFC clearly incorporates the opinion evidence that George experiences

finger difficulties when exposed to the cold by stating that George should have "no exposure to

extreme cold." *Id.* at 19 (Tr. 14).

George further argues that the ALJ did not sufficiently incorporate the opinions of Dr.

Carli, a state agency reviewer, who opined that George would have concentration problems up to

one third of the time and problems with prolonged concentration and sustained pace. Doc. #11-1

at 14-16; *see also* Doc. #10 at 97 (Tr. 92). George also points to other evidence in the record

reflecting that she has problems with off-task behavior, absenteeism, and distracting others. Doc. #11-1 at 14-16. The RFC includes the limitation that George be limited to "simple, routine, repetitive tasks but not at a production rate pace" and "frequent interaction with supervisors, occasional interaction with co-workers, and rare interaction with the general public." Doc. #10 at 19 (Tr. 14). George argues that this limitation does not account for all of George's mental and behavioral problems, and if the RFC had incorporated the opinion evidence of Dr. Carli and others, it would include limitations considerably more stringent. Doc. #11-1 at 14-16.

The ALJ took careful account of the evidence regarding George's mental and behavioral problems—including that of Dr. Carli—in fashioning the RFC limiting George to simple tasks, not at a production rate, and limiting her interactions with co-workers and the public. Doc. #10 at 18-24 (Tr. 13-19). Moderate limitations in work-related functioning may not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010); *Hillman v. Comm'r of Soc. Sec.*, 2019 WL 2409661, at *2 (W.D.N.Y. 2019).

To be sure, the record contains multiple references to George's memory lapses (normally while abusing drugs), irritability, and poor attention span. The record also indicates that George's mental and behavioral issues improved with treatment and lack of substance abuse, allowing her to concentrate and attend to tasks normally, and that she is able to visit family and have a social life. Doc. #10 at 1129, 1257 (Tr. 1124, 1252). "If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149. Here, although the available evidence might have been open to an interpretation that George had more significant limitations than the ALJ found, substantial evidence supports the ALJ's conclusion otherwise.

### *Lack of medical evidence for RFC*

George argues that as a result of the alleged errors made by the ALJ, the ALJ improperly relied on his own opinion rather than medical evidence when determining the RFC. Doc. #11-1 at 12. To be sure, an ALJ "is not qualified to assess a claimant's RFC finding on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018) (cleaned up). Nevertheless, the ALJ's opinion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 Fed. Appx. at 56. Here, the ALJ gave "great weight" to the opinions of the consultative state examiners and "significant" weight to the opinion of Dr. Akus. The ALJ's decision carefully explains why he assigned greater weight to certain opinions in the course of determining the RFC. Doc. #10 at 19-26 (Tr. 14-21).

### *Step Five analysis*

Finally, George claims that the ALJ's Step Five analysis was invalid and not supported by substantial evidence because the three jobs the ALJ determined George can perform occur only rarely and are not available in significant numbers in the national economy. Doc. #11-1 at 16-17. Relying on testimony by the vocational expert, the ALJ found that George can perform three jobs for which there are 10,500 positions available in the national economy: the work of jewelry painter (1,500 jobs available nationally), automatic grinding machine operator (6,000 jobs nationally), and security surveillance system monitor (3,000 jobs nationally). Doc. #10 at 27 (Tr. 22). "The term 'significant number' is not statutorily defined and courts have generally found that what constitutes a 'significant' number is fairly minimal." *Rodriquez v. Astrue*, 2013

10

WL 3753411, at *3 (S.D.N.Y. 2013*). Here, the ALJ found that there were 10,500 available jobs in the national economy, and this is above the threshold of 9,000 to 10,000 jobs that other courts have found sufficient to meet the "significant number" threshold. *See, e.g., Poole v. Saul*, 2020 WL 2611230, at *20 (D. Conn. 2020) (citing cases); *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (citing cases).

George also challenges the ALJ's reliance on the vocational expert's testimony. Doc. #11-1 at 18. The vocational expert relied on information found in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations, which defines jobs but does not speak to how many are available. Doc. #10 at 69 (Tr. 64); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012). The vocational expert did not provide the underlying source of the numbers data. Doc. #10 at 65-66 (Tr. 60-61). In her motion, George offers jobs-numbers from an alternative source and argues that the numerical data provided by the vocational expert is wrong for two of the three jobs (jewelry painter and grinding machine operator). But George was represented at the hearing, and the ALJ afforded George's representative an opportunity to the examine the vocational expert. Doc. #11-1 at 68-69 (Tr. 63-64). George's representative did not challenge the vocational expert's job numbers testimony at the hearing. *Ibid.*

In order for an ALJ to reasonably credit testimony from a vocational expert, it is sufficient that "[t]he vocational expert identified the sources he generally consulted to determine such figures." *Monahan v. Berryhill*, 2019 WL 396902, at *5-6 (D. Conn. 2019); *see also McIntyre*, 758 F. 3d at 152 (noting that a "vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally" and concluding that "the vocational expert was not required to articulate a

11

more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was

given on the basis of the expert's professional experience and clinical judgment, and which was

not undermined by any evidence in the record."). Indeed, "the substantial evidence standard does

not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without

requiring the expert to lay a further foundation about the sources that the expert has consulted in

order to arrive at the expert's job-number information." *Crespo v. Comm'r of Soc. Sec.*, 2019

WL 4686763, at *9 (D. Conn. 2019). Accordingly, I find that the ALJ reasonably credited the

vocational expert's testimony.

CONCLUSION

For the reasons set forth above, the Commissioner's motion to affirm (Doc. #12) is

GRANTED, and plaintiff's motion to reverse (Doc. #11) is DENIED. The Clerk of Court shall

close this case.

Dated at New Haven this 14th day of October 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

12